Raymond Sullivan
2601 S. Pavilion Center #1250
Las Vegas, Nevada. 89135

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Plaintiff ) | |
| ) | |
| Raymond Sullivan ) | |
| ) | |
| Pro Se ) | |
| ) | |
| vs. ) | |
| ) | |
| HARRAH'S ENTERTAINMENT, INC, ) | |
| a Delaware corporation, d/b/a ) | **2:09-CV-2254 JCM-RJJ** |
| CAESARS PALACE HOTEL AND ) | |
| CASINO ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Gary William Loveman, ) | |
| Chairmen,CEO, and ) | |
| President of Harrah's Entertainment ) | |
| 3570 Las Vegas Blvd. South ) | |
| Las Vegas, Nevada. 89109, ) | |
| ) | |
| John W. Baker, ) | |
| Senior Vice President, ) | |
| Harrah's Entertainment, ) | |
| 3570 Las Vegas Blvd. South ) | |
| Las Vegas, Nevada 89109, ) | |
| ) | |
| Dean Allen, ) | |
| Vice President of Human Resources ) | |
| Caesars Palace Las Vegas ) | |
| 3570 Las Vegas Blvd. South ) | |
| Las Vegas, Nevada 89109, ) | |
| ) | |
| Deborah Gianini, ) | |
| Director of Human Resources, ) | |
| Caesars Palace Las Vegas, ) | |
| 3570 Las Vegas Blvd. South ) | |
| Las Vegas, Nevada 89109, ) | |

1

Lisa LeRoux,                                )
Beverage Director,                          )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Todd Owen,                                  )
Employee Relations/Labor Relations         )
Councilor,                                  )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Matthew Stober,                             )
Beverage Manager,                           )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Jere Stuhlmiller                            )
Human Resources Councilor                   )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Sylvia Ocampo                               )
Human Resources                             )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Brianna Jackson                             )
Assistant Beverage Manager                  )
Caesars Palace Las Vegas,                   )
3570 Las Vegas Blvd. South                  )
Las Vegas, Nevada 89109,                    )
                                            )
Keith Devine                               )
was a Caesars Palace assistant beverage    )
manager at time of action 2002-2006,        )
Address unknown                             )
                                            )
Pat Enis                                    )
was a Caesars Palace assistant beverage    )
manager at time of action 2002-2004,        )
Address unknown                             )

2

```
                                          )
            and                           )
                                          )
Mark J. Ricciardi, esq,                   )
Attorney at Law                           )
3800 Howard Hughes Parkway, #950          )
Las Vegas, Nevada, 89169,                 )
Phone: (702) 252-3131                     )
                                          )
            and                           )
                                          )
The United States                         )
Federal Department of Labor               )
    Serve:                                )
                                          )
Susan Nern                                )
Assistant District Director of            )
the Federal Department of Labor           )
Phoenix office                            )
Phoenix, Arizona.                         )
                                          )
```

## A. NATURE OF THE ACTION

1. This case seeks relief against Caesars Palace and various individuals for the callous and unethical way in which they treated an employee who sought help from his employer to remedy the misrepresentation of financial records to the Internal Revenue Service that caused severe financial and emotional distress and harm to the quality of life of this employee. Rather than act to help the employee remedy the grievance they hindered legal process and threatened the employee with termination causing him emotional distress, grief and fear of his employer and their actions. On or around February 9th of 2003, Plaintiff Raymond Sullivan was depressed and had been thinking of one of his close friends he had just heard committed suicide by overdose, he was also thinking of one of his best friends from childhood who he recently found out had Hodgkins Lymphoma Disease and was told the news he was most likely terminal, he was also thinking of his

3

close friend who had recently committed murder and attempted murder on another while visiting him at his apartment complex, he also felt humiliated and depressed when a co-worker read a very personal letter that he wrote to her but he made a critical mistake of composing it using Windows Word 98 which the program claimed to have fixed some grammar errors in the letter when he printed it out but when he later came home he discovered by scrolling further down that the document that was created in Windows Word 98 that he gave to the co-worker of which he originally thought was only correcting a grammar error found on the first highlighted paragraph of the letter when the pop-up message notified the error and offered to correct it and what in actuality had happened the program had totally re-written the entire letter and when he discovered the co-worker was refusing to talk with him about it to tell her about what happened she had already decided to share the contents of the letter to his friends and co-workers, this letter had originally contained very personal feelings and concerns for the recipient of the letter and discussed how his mother had a serious drug problem and that he had a drug dealing step-father who abused him, the plaintiff was also severely distraught when he was given a notice of shift change by bartender manager Matt Gambil and that he was to be relieved of his current shift because of remodeling of the Cleopatra's Barge Bar and would be returning to the shift he had previously in Cafe Lago on grave yard where he made far less tipped income than the shift he currently held and Cafe Lago the shift he was to return to was the same shift he held when he believed previously the employer over allocated his tipped income and was under the impression when he signed a tip compliance form in 1997 that he would not be allocated tips by his employer as per the agreement of terms by signing and agreeing to partake in that program established by the employer and the IRS, the plaintiff was also concerned at this time that his financial dilemma was a result similar to what he had heard some of his bartender co-workers had been experiencing which they told the plaintiff that the employer had been incorrectly reporting income to the Internal Revenue Service, the plaintiff also at this time had concerns as he had also heard by third party that a bartender while working in Room Service for an entire year was rumored to have been allocated an amount close to $100,000 and in the same rumor he heard that a manager had intentionally misrepresented the bartenders register sales to cover up a theft of $1,000,000 to $2,000,000 that year and in this rumor the manager in Room Service only known by the first name by the Plaintiff was discovered by the employer as a direct result of the bartender stationed in Room Service reporting to the company that they grossly over reported his tipped income on his w-2 form and as a result of that the Room Service manager and some butler staff were either forced to resign or terminated as a result of the

4

investigation within Caesars Palace, the plaintiff was concerned that the director of his department Lisa LeRoux and other managers under her had possibly been doing similar activity as he had previously witnessed while working at the High-Limit Service bar that revenue often rung up as water sales in the thousands of dollars was being moved around from beverage venues that had cash and credit revenue to service bar venues that only had casino comp revenue and the plaintiff had inquired at an earlier time while working at the High-Limit service bar which is a revenue center that only dealt with casino comps asked assistant beverage manager Keith Devine why he was transferring large amounts of revenue to the High-Limit service bar from the Shadow Bar which is a cash and credit revenue center and Keith Devine got upset and appeared agitated and the plaintiff was concerned that he too was witnessing a similar activity that he heard rumor the bartender working in Room Service had gone through and the plaintiff feared that the allocated tipped income he felt had been over reported to the IRS on several of the years he worked for the employer and the hostile actions when trying to seek remedy for the over reported income further brought suspicions that he too was in a similar situation as the bartender in Room service and felt that possibly the threats for attempting to remedy the misrepresented reported income they gave to the IRS was a cover up and Caesars Palace sought only to protect itself from adverse publicity or liability, the plaintiff also had thoughts that he was now disfigured by dental problems caused by his disorder of having severe nightmares and expelling stomach acid that severely damaged his teeth, further the plaintiff while working at the Sports Book bar was told by another bartender at the same venue that he had heard about the letter the plaintiff had given to the waitress and the realization of rumor causing great humiliation combined with grief that he had been thinking of previously the plaintiff began to panic and felt a need to leave the premises, the plaintiff met on the way to the front door exit assistant beverage manager Pat Enis whom asked if the plaintiff was feeling alright and the plaintiff informed Pat Enis that he was in need of help but desired to discuss this help in privacy and not on the casino floor, Pat Enis took the plaintiff to the Food & Beverage office meeting room where the plaintiff requested Pat Enis's help and informed him that he had suicidal thoughts and explained his situation with Caesars Palace's misrepresentation of income reported to the IRS and further explained that when he informed management and sought out remedy of the problem all he experienced was a shuffle around departments and was told over and over again "they were working on it, it takes time" and "we will fix the problem don't worry" and by Lisa LeRoux "Do you care more about your tax problem or your job?" and "Sorry but after looking into this we realize its another departments problem?" and at this time he was now having his wages garnished

5

and felt that Caesars Palace was to blame, further the plaintiff informed Pat Enis that he felt like he should leave the employ of Caesars Palace but he could not due to his belief that most establishments that employ bartenders in the Las Vegas area have gaming and due to the nature of cash handling of a like position they actively screen out job applicants who have bad credit, further the plaintiff said he felt like any other job outside of his profession that he felt he would be forced to take would not be able to sustain or afford a place to live or feed himself after the IRS garnished wages and the plaintiff had acquired a large debt to his father that was still growing to help pay this debt that the plaintiff felt the employer was mostly responsible for caused grief not only to him but to his family as well, Pat Enis called security and an emergency medical response team came soon after and the plaintiff when asked by the emergency response team if he felt he needed medical attention the plaintiff's response was yes.

2. On or around February 14th of 2003, Raymond Sullivan was released from the hospital after a five-day emotional evaluation he was informed he could not return back to work and was effectively put on an unpaid medical leave by his employer which did not help his recovery because Raymond Sullivan could not afford to eat or pay his bills because of his financial situation which further induced Raymond Sullivan's sleep disorder and spent approximately fourteen days with little or no regenerative sleep and further caused depression, it is the plaintiffs belief that the injury was on the employers property and happened while he was working and the nature of the injury is perceived by the plaintiff to be the employers fault

.

3. On or around March 1st of 2003, Raymond Sullivan received a phone call from Bevrage Manager Matt Gamble notifying he could return to work the next day.

4. when Raymond Sullivan returned to work on or around March 2nd of 2003 while working at the High-Limit Service bar Beverage manager Matt Gamble and an assistant Beverage manager name Kurt Yamahara and assistant Beverage manager Keith Devine came in to see how the plaintiff was doing, when the managers appeared to have left assistant beverage manager Keith Devine came back into the service bar and got into Raymond Sullivan's face and put his index finger about four inches from his eye and said "If it were up to me you would be fired you psycho fuck!" then turned to leave the same way the other managers had gone, this action had instilled fear into Raymond Sullivan and did not report this action right away out of fear of retaliation so soon after

6

the incident of going to the hospital.

5. On or around March 3rd of 2003, Raymond Sullivan went into work and when he started his shift he was immediately informed he had to report to human resources and meet with a human resources representative named Sarah Conte, Sarah Conte told the Plaintiff that him returning to work so soon was in error and that he needed to sign a statement to allow Caesars Palace to get a second medical opinion to see if he were fit to return to work, Sarah Conte furthermore told Raymond Sullivan that his choice to sign the document would greatly influence weather he would be allowed to work again and also told him that the company was holding a letter that was sealed that they had obtained from the waitress that he gave letters to that he had feelings for and was going to hold that letter to use against him if necessary, Raymond Sullivan felt extreme grief and intimidation with the combination of experiencing the recent events that he had stated before of not being able to afford groceries and loss of appetite and sleeplessness so under duress he signed the agreement, it is the Plaintiff's belief that as per contract with the Bartenders Union this was an illegal act as any form of discipline which the Plaintiff deems that this was because he was allowed to return to work and then that was taken away and than further threatened to be terminated by Sarah Conte if he did not followed her and the companies will, Raymond Sullivan also feels that the threat of the letter was also a device by the company to intimidate Raymond Sullivan later in his own complaints against the company as a way to prevent Raymond Sullivan from going to the authorities, as even at this time this action took place Raymond Sullivan believed that Sarah Conte must have spoken to assistant beverage manager Pat Enis about the conversation the night he was taken by emergency medical technicians for suicidal evaluation and that Pat Enis told her how the Plaintiff felt his breakdown was because of the companies previous actions as told above and Sarah Conte was taking unfair advantage of Raymond Sullivan's emotional state to shield the company from being liable and made threat to deter Raymond Sullivan from taking legal action.

6. On or around April of 2003, Raymond Sullivan was asked by Pat Enis if he could talk to him a moment when Raymond was taking his break up in Cypress Court, When Pat Enis had Raymond Sullivan alone he told Raymond he used to be in the Special forces and his specialty was interrogation, Raymond became nervous as to why Pat Enis would start a conversation this way, Pat Enis continued and said I'd like to ask you a few questions about what happened and how you are doing and said he was really just concerned about Raymond and this would be just between him and Raymond and the conversation would go no further, he asked what type of doctors he saw,

what medications he was on, what hospital he went to and other personal medical information, Raymond felt intimidated as he just recently returned and was threatened by another manager and out of self preservation Raymond answered his questions.

About a month later Raymond started hearing rumors of him going to a mental hospital for psychiatric evaluation.

Later in or around 2005, The waitress who Raymond sent the letters to told Raymond that assistant beverage manager Pat Enis told her most of the stuff the from the night he asked all of those personal questions and the waitress repeated stuff that only Pat Enis was told on that night.

Also another waitress was going out of her way to tell every newly hired waitresses that worked at the Slice Bar with Raymond that he was "crazy" and in a psyche ward and other derogatory comments to them about Raymond and created a lot of grief and suspicion that made it very hard for Raymond to recover and feel singled out and hurt.

Raymond has witnesses who will attest to the fact that a waitress had indeed harassed Raymond by creating a hostile work environment.

This waitress who spread rumors of Raymond and told many of them that he was crazy and to stay away from him hurt him so bad that Raymond Sullivan started to withdraw from any social activity and to this day Raymond Sullivan believes he has troubles socializing because of what Pat Enis did and this rumor spreading waitress that it has effected Raymond's life beyond the employ of Caesars Palace.

Raymond grew so anti-social that he had sabotaged other relationships outside of work because of trust issues with others.


7. Rumors that one or more members in Human Resources Sandra Poynor and/or Sarah Conte were charged on counts of perjury for misrepresenting documentation and/or giving false statements in a Federal court EEOC v. Caesars Entm't Inc., D. Nev., No. 2:05-CV-0427-LRH-PAL or another appeals court over the six-kitchen workers case vs Caesars Palace and the rumor is that harassment records were destroyed and false statement to protect the company was committed and Raymond Sullivan has concern because both of these individuals have received complaint statements of harassment from Raymond Sullivan and made judgments against Raymond Sullivan, further more the Plaintiff believes that Caesars Palace has used these same tactics with evidence and statements against him and also the Plaintiff's beliefs are that Harrah's Entertainment has adopted this type of unethical practice as policy and have use and currently uses this method or methods as tools to

8

intimidate and to retaliate and to unfairly gain favor in official judiciary processes.

8. In the early part of the year of 2008 around March, a bartender at Caesars Palace and many others had their shifts saved by Matt Stober, John King and Lisa LeRoux, Matt Stober saved this others shift so he could remain at the SeaHorse Lounge and keep the majority of his shift intact, it is the Plaintiff's belief that this other bartender and Matthew Stober are close friends.

9. On or around March 28th of 2008, Raymond Sullivan confronts Matthew Stober about the a printed e-mail that a shop-steward gave him and showed the documents to Matthew Stober and effectively notified him that he had evidence that Matthew Stober and Deborah Gianini had prior knowledge that he had called the FMLA message line before the Grievance Hearing on March 15th of 2008.

10.        The behavior of the Defendant(s) has brought a tremendous amount of grief and brought harm onto the Plaintiff and it is the Plaintiff's belief that he has become more emotionally ill since Caesars Palace and Harrah's Entertainment began this practice of unethical and unusual treatment to the point that he regards their actions to be harmful and cruel, however the Plaintiff wants to see justice and believes that he had to return to the employ of Caesars Palace on October 31st 2009 to prove his innocence and to reveal the Defendants guilt and also return because the damages they had done to him as a result of his termination and lost income during his period of employment  the Plaintiff believes that the employer has made him emotionally so ill that he is no longer as valuable as he was before in the job market because of their treatment and actions he believes is cause of a new emotional illness that he has developed a social phobia or social phobias and caused further depression that he has concerns he will never recover from, also the Plaintiff could not afford proper medical treatment because of the loss of his insurance and income that he believes is a direct result of the defendants actions and has not been seen at this time of writing of this document a medical professional since a time before his termination on December 1st of 2008, the Plaintiff during his unemployment had spent the greater majority of this time feeling severe loneliness and depression and felt he had little self worth and could not find a job because he could not hide his emotional state from perspective employers and he also feels this was caused by the acts of the defendants, the Plaintiff also experienced many times through his unemployment not being able to afford to buy groceries or fix his vehicle and lived too far away from public

transportation to use that effectively on a regular basis because of this it made it very hard to find other work or get food or much needed medical care and caused the Plaintiff to emotionally withdraw from society further, the Plaintiff believes that a majority of this could have been averted if the Defendants had only supplied the Plaintiff with a simple document(s) the IRS requested Raymond Sullivan to obtain from his employer and needed it to supply the IRS to correct the misrepresented income and position they had supplied to the IRS, instead the Defendants hindered that process and used intimidation and used the Plaintiff's disability against him and the tactics mentioned above to terminate and cause further financial harm to an individual who needed the income they denied him to pay for debts that were created and accrued because of the Defendants actions and to prevent Raymond Sullivan from his right to work and make an income so he could afford to pay for much needed medical attention and medications, therefore the second reason to return to work for his past employer was to get insurance to seek medical attention and to earn income to pay debt accrued and to afford groceries and attempt at having some sort of a normal life, however the feeling that the employer will seek to retaliate again is creating work related stress and fear of his employer which is triggering the severe sleep disorder and anxiety and wishes that he could feel safe at his place of employ and freedom of injustice but since the employer has made little or no attempt to accommodate or remedy Raymond Sullivan in any way but give him his job back and not so much as one apology from Caesars Palace management has created an uncomfortable atmosphere.

## B. JURISTICTION AND VENUE

11.      Americans with Disabilities Act, subpena violations, Intentional Infliction of Emotional Distress, the Family and Medical Leave Act,  Fair Labor Standards Act, Conspiracy to commit Perjury by willful misrepresentation of statements and documents to gain favorable decision of federal and state agencies and federally protected union hearings and arbitration in part or all processes, Retaliation for complaints made to Local and State and Federal agencies, fraud on the court, because of extraordinary circumstances and his disability the plaintiff wishes to motion for the court to grant in this case an extension on some or all statute of limitations.

## C. THE PARTIES

12.      Plaintiff Raymond Sullivan is a resident of Clark County, Las Vegas, Nevada and of legal citizenship in the United States. He is a person with a disability within the meaning of the

American's with Disabilities Act (ADA), At the time of action(s) he was covered by the Family and Medical Leave Act of 1993, Covered by the Fair Labor Standards Act, Title VII, and protected by all laws applicable to this case.

13.     Defendant, Harrah's Entertainment, Inc., a Delaware corporation, d/b/a Caesars Palace Hotel and Casino, is a corporation with more than 80,000 employees, its headquarters are located in Las Vegas, Nevada, is competent to sue and be sued in the State of Nevada.

14.     Defendant Gary William Loveman is the Chairmen, President and CEO of Harrah's Entertainment lives in Boston, Massachusetts but commutes to conduct business at Harrah's Entertainment headquarters in Las Vegas, Nevada.

15.     Defendant John W. Baker is the Senior Vice President of Harrah's Entertainment.

16.     Defendant Caesars Palace is a Harrah's Entertainment, Inc. property.

17.     Defendant Dean Allen is the Vice President of Human Resources at Caesars Palace Las Vegas.

18.     Defendant Deborah Gianini is the Director of Human Resources at Caesars Palace Las Vegas.

19.     Defendant  Lisa LeRoux is the Director of Beverage at Caesars Palace Las Vegas.

20.     Defendant Todd Owen is the Employee Relations/Labor Relations councilor at Caesars Palace Las Vegas.

21.     Defendant Matthew Stober is the Beverage manager at Caesars Palace.

22.     Defendant Jere Stuhlmiller is a Human Resources Councilor at Caesars Palace Las Vegas.

11

23.      Defendant Sylvia Ocampo is the Employee Relations Coordinator at Caesars Palace Las Vegas.

24.      Defendant Brianna Jackson is an Assistant Beverage Manager at Caesars Palace Las Vegas.

25.      Defendant Keith Devine was an Assistant Beverage Manager at Caesars Palace Las Vegas.

26.      Defendant Pat Enis was an Assistant Beverage Manager at Caesars Palace Las Vegas.

27.      Mark J. Ricciardi, ESQ, is an attorney at law in Las Vegas and has represented Caesars Palace Las Vegas.

28.      Defendant Susan Nern is the Assistant District Director of the Federal Department of Labor whom has jurisdiction over and does business in Las Vegas, Nevada.

## D. THE FACTS SUPPORTING PLAINTIFF'S CLAIMS

29.      The Plaintiff Raymond M. Sullivan was hired at Caesars Palace on November 4th of 1997 and is currently employed by Caesars Palace.

30.      During the years of 1997 up to January of 2001, Raymond Sullivan enjoyed working at Caesars Palace and had made many close friends there and was happy with his job and the clientele that he would meet from all corners of the world.

31.      In 2001 Raymond Sullivan had his shift changed from a swing shift in a venue named Caesars Magical Empire to a less tipped income venue named Cafe Lago on graveyard, the shift change he was told was due to his house seniority and the closure of another beverage venue.

32.      Caesars Palace misrepresented Raymond Sullivan's allocated tipped income for several years to the IRS as well as misrepresented his job title and station and going so far as

12

claiming Raymond Sullivan had a position as a Wine Sommelier/Beverage Administrator in a five star restaurant named Palace Court on swing shift in the year of 2001, when in actuality the restaurant had closed in 1999 and was impossible for Raymond Sullivan to have worked that position because he was not qualified or certified as a wine sommelier nor was it possible to work in a fictitious restaurant, other shifts were also misrepresented for the year of 2001 as well as other years, after notifying the management of Caesars Palace about the misrepresented reporting of records to the IRS and notifying that it was causing grief and damages to the Plaintiff as stated in the above complaint, rather than helping correct and repair damages by giving the plaintiff a simple letter that the IRS demanded that he obtain from Caesars Palace which had to have Caesars Palace logo on the header of the letter with the body of the document having the correct shifts and income that the Plaintiff really had made for the years claimed in error that was submitted by Caesars Palace and needed to be signed by an authorized manager who had the authority to write such a document, they instead caused further grief and damages by misleading the plaintiff into believing they were going to remedy the errors and as a result hindered legal process, the originals were given to Beverage Director Lisa LeRoux and never returned to the Plaintiff by Lisa LeRoux, the only reason the plaintiff had another copy of 2001 was that he found it so absurd that he was claimed by the defendant to be a wine sommelier in a restaurant that was closed in 1999 and sent an additional copy to his father in e-mail and was able to retrieve it.

33.     On or around January of 2004, Keith Devine threatens Raymond Sullivan by telling him that he is watching him on the cameras on the Slice Bar where Raymond Sullivan works and tells Raymond that he is going to fire him and he has Lisa LeRoux's full support to do so.

34.     2004 Raymond was terminated for not following procedures when he thought another bartender had a tab open with two people at the bar and because of the cunfusion and the fact it was the first night of Elton Johns Concert at Caesars Palace and the Slice bar where Raymond Sullivan was working at was very busy and the two people were never properly charged for their beverages and they felt the need to pay so they gave the money to a new bar apprentice who later was revealed on camera to put the money in her purse and Raymond was off the bar when she took the money, Raymond Sullivan was fired due to this and later had a grievance for wrongful termination, during the process of the hearing Lisa LeRoux approached both Raymond Sullivan and his shop steward and told them that it was up to her if raymond Sullivan was to return to work or

13

not and said to the shop-steward I will allow Raymond to return if he drops his FMLA and promises not to renew his FMLA again or else, Raymond Sullivan has in his possession a statement from the shop-steward that supports this event.

35.     On or around late 2007 John King had also displayed discriminatory behavior in front of the Plaintiff in this case when he made derogatory statement to a waitress that she apparently found offensive and this waitress was over the age of 40 at the time of this incident, the statement John King made was "I don't believe the PusseyCat Doll people would want you as a waitress because quite frankly you are to old and out of shape to be a PusseyCat Doll.", John King said this in front of the Plaintiff and directed his statements to waitress who was at the receiving end of this derogatory statement and one another waitress was witness and the Plaintiff and this other waitress all worked together at the Slice Bar.

36.     On September 21st of 2007 I called Caesars Palace Human Resources Message Line an established system to notify Human Resources that people with Family and Medical Leave Act can are using their FMLA for the day of the call, the Family Medical Leave Message Line that Caesars Palace had established has a list of instructions about 45 to 60 seconds long on what to do and I followed every instruction that was requested of me every time I used my FMLA including this day, you must wait for about f ring for it to pick up and then the following message of instructions:

"Please listen to this entire message, you have reached the Human Resources FMLA voice messaging system, please clearly state the following information, your first and last name, your employee ID number starting with 800, your call back telephone number, the date of the infraction covered under FMLA, if you are utilizing FMLA for an early out please indicate the number of hours that you are requesting FMLA for, you are also required to notify your department of this infraction as outlined under your departments policy and procedures, if you have questions and are not calling out for an infraction covered by FMLA please contact your human resources representative at 866-1040"
This message is then followed by a beep and you are able to then leave the information the instructional message requests of you to do, the Plaintiff followed all procedures as instructed and gave all information voiced on the message recording and effectively notified Human Resources at

4:03am that he was using his FMLA for the day of the call to cover his shift that started at 6:00pm at the Slice Bar as a bartender which is effectively 15 hours and 57 minutes before his shift. This is supported in evidence by printed out copy of an e-mail transmission from the Human Resources Department to the Beverage Department that had the data that shows Raymond Sullivan in fact called at the time as stated above 4:03am and this printed out e-mail was printed out by Caesars Palace assistant beverage manager Amanda Cordez who printed it out for Bartender Shop-Steward Benny Amin to give to Raymond Sullivan as evidence, this e-mail contains proof of knowledge and time of when that knowledge was obtained, the following is the contents of Amanda Cordez's copy of the e-mail she supplied Shop-Steward Benny Amin;

The printed copy has proof it was printed out by Amanda Cordez Caesars Palace assistant beverage manager on the upper right hand corner,
Everything contained in quotes are the contents of the actual e-mail itself,
"From: Teresita Avila
 Sent: Tuesday, September 25, 2007 4:16 PM
To: Matthew Stober; John King; Lisa LeRoux; Kelly Snyder; Natasha Clark; Scott Richard; Lori Clark; Lori Pauly; Amanda Cordez; Carol Weaver
CC: Matt Krystofiak; Deborah Gianini
Subject: FMLA calls for 9/19/2007 thru 9/24/2007
(a symbol for an attached spreadsheet is present, marked Call Log New Sept 19 thru 24-0...)
lease review the attached spreadsheet. These are calls that have been logged from FMLA Call Line. If you have associates who have called out, under FMLA, and they are not listed on the attached spreadsheet, please email those names to me.

Associates are required to utilize departmental call-out procedures and call the FMLA line at 731-7358. If an associate is unaware of the additional call to the FMLA line, we would like to review the process with them.

Thank you for your assistance."

The following in quotes is what is contained in the second attached page that Amanda Cordez printed out as evidence, it is a spreadsheet with columns for |Employee Name|Emp#|Date Called

Line|Time Called|Date Called For|

"Raymond Sullivan is shown twice in the Employee Name Column, 800189814 is shown twice in the column marked EMP#, 21-Sep-07 is shown twice in column marked Date Called Line, 4:01a is marked twice in the Time Called column, 21-sep-07 is in the column marked Date Called In For column one time, 20-Sep-07 is marked in the Time Called column one time"

The Plaintiff has this print-out by Amanda Cordez in possession as supporting evidence.

The Plaintiff has in possession the disciplinary action form showing he was awarded 6-attendance points for a no-show/no-call violation issued to him on October 2nd of 2007 as supporting evidence that the Plaintiff was awarded attendance points which is in violation of the Family Medical Leave Act.

37.     On October 9th of 2007, the Plaintiff notified Gary Loveman by being connected directly to his office by phone, Raymond Sullivan first left a message that he was going to the FBI and IRS if Gary Loveman failed to contact him soon, Gary Loveman called Raymond Sullivan soon after that message was given, Raymond Sullivan notified by phone that he had given a document of complaint to the beverage department about their actions and that of Human Resources and other departments that had brought a tremendous amount of grief to the Plaintiff and told Gary Loveman that he was going to go to the FBI, IRS and authorities that had jurisdiction over such violations including FMLA, possible Tax Fraud, and discrimination against Raymond Sullivan by Caesars Palace (a Harrah's Entertainment venue) but wanted to give the company an opportunity to remedy the problem first before taking any such action, Raymond Sullivan further told Gary Loveman the reason for contacting him was the fact that Raymond believed that members of the Beverage department and Human Resources were keeping this situation departmentally contained so corporate would not have knowledge of legal liability and to protect themselves from disciplinary action, Gary Loveman assured Raymond Sullivan that this matter would definitely be addressed and that he was personally going to make sure that the company did right by Raymond Sullivan, Gary Loveman further stated that he would like a copy of the document that Raymond gave the beverage department, Raymond Sullivan said that he was right at his computer and could send it to him immediately by e-mail, Gary Loveman asked Raymond Sullivan to send him that complaint by

16

e-mail to his personal assistant John W, Baker at the following e-mail address
jobaker@Harrahs.com and Raymond Sullivan did just that and evidence of that is available, the
Plaintiff has the e-mail and the history of the e-mail origins and the e-mail communication and
proof it was read and all attachments as evidence.

38.     On October 9th of 2007, the **Plaintiff** notified John W. Baker by e-mail as per Gary
Loveman's request, Raymond Sullivan had earlier contacted the CEO, Chairman and President of
Harrah's Entertainment Gary Loveman by phone and Vice President & Executive Associate to
Chairman & CEO of Harrah's Entertainment John W. Baker by phone and by request of Gary
Loveman e-mail correspondence with John W. Baker as well and requested to supply a letter of
complaint Raymond Sullivan had to [jobaker@harrahs.com] both of whom promised to investigate
the allegations and promised that the Plaintiff would not be retaliated against for supplying the
complaint to them over the phone, in fact to further support this John W Baker had further in e-mail
correspondence with the Plaintiff stated, **"Raymond, Thanks for taking the time to forward this
information to me. Please allow me some time to read this and have research done by the
appropriate parties so that we get you a proper response. We take all allegations seriously and
it is company policy that there can be no retaliation whatsoever for filing a report such as
yours. I do apologize that this has troubled you for so long. You deserve a clear answer from
the company in response to the allegations."** the above in quotes was an actual  response from
John W. Baker in the above stated e-mail after the Plaintiff sent an attached letter of complaint that
notified both above individuals of the request to remedy the tax problems created by Caesars Palace
and further notified the two individuals of discrimination and retaliation that the Plaintiff believed
to have been experiencing to John W. Baker by e-mail as instructed to do by Gary Loveman, yet
after they severed all contact with the Plaintiff the Plaintiff experienced elevated retaliation and
increased attempts to terminate by misrepresentation of attendance records and one such action that
was depicted as an example by the Plaintiff in the complaint in e-mail to John W. Baker actually
happened to the Plaintiff about six months after correspondence being severed by John W. Baker,
the depicted example was similar if not the same scenario of a rumored employee being terminated
for a no-call/no-show violation by Caesars Palace when this fictional employee had in fact been on
an approved vacation for the dates he was accused of violating policy of no-call/no-show, this
happened to the Plaintiff just as the Plaintiff described in the example in the attached letter of
complaint sent to John W. Baker in e-mail correspondence, FACT, furthermore to the astonishment

17

of the Plaintiff this scenario did take place on the first day the Plaintiff's Family Medical Leave Act expired which was May 1st of 2008 same day as the Plaintiff's Suspension Pending Investigation was issued for a no-call/no-show on dates he had signed approved vacation for by the same manager a Matthew Stober beverage manage who also motioned for the termination and Plaintiff holds as evidence the e-mail and all of its unique data that contains proof of date and e-mail delivery origins including all communication between the Plaintiff and Defendants parties, the Plaintiff also holds in possession the certified letter that notified the Plaintiff his Family Medical Leave expired May 1st of 2008, and has in possession the document of disciplinary action on May 1st of 2008 that Matthew Stober authorized and motioned for and served out by Human Resources labor relations officer Todd Owen.

39.     On Monday, November 5th, 2007, Raymond Sullivan discovered when he tried to make an appointment with his mental health care provider that his Medical insurance was dropped and realized that he was getting billed for medical visits and the cause was that his employer had misrepresented the hours reported to the insurance company, this is a violation of Family Medical Leave Act and the Plaintiff notified John W. Baker immediately after this discovery by e-mail of this event. Plaintiff has records and proof of e-mail evidence of contacting John W. Baker whom he reported this event to. Plaintiff in possession of evidence of Dean Allen e-mail correspondence.

40.     On or around November of 2007, a Chef from Neros Restaurant who is a part of Caesars Palace management came forward and approached Raymond Sullivan and another employee named Daniel who was a Pizza cook at the Slice Bar at the time in which Raymond Sullivan and Daniel both worked together, the Chef from Neros Restaurant who the Plaintiff believes he identified himself as "Sean" or perhaps "Todd" told the Daniel in the Defendants presence that he had to warn Daniel that he just came from a meeting with food and beverage management that was led by a member of Human Resources that in this meeting was discussed how to terminate individuals who had Family Medical Leave Act and that some of the managers had discussed how two individuals in the Food Court where Raymond and Daniel both worked were being discussed about, the Chef appeared as though he had to urgently warn Daniel out of concern whom this Chef from Nero's Restaurant were friends of Daniel and although Raymond Sullivan who did not know this manager just happened to be there as this was discussed within the same station as Daniel the Pizza cook and Raymond Sullivan worked together at the Slice Bar, this Chef

18

also said that he was to leave Caesars Palace for a new job soon so he felt better about freely giving warning to Daniel.

41.       On or Around November of 2007, about two days after the day Raymond Sullivan witnesses Daniel being warned by the Chef from Nero's Restaurant, Raymond Sullivan witnessed his co-worker Daniel getting disciplined by the Chef in the restaurant venue that Raymond Sullivan and Daniel both worked in, he witnessed the Chef accuse Daniel of theft and told Daniel that he was immediately to be terminated, Raymond Sullivan knew that Daniel was innocent and called the Beverage Manager Matthew Stober minutes later that he believed that Daniel the Pizza Cook was innocent because he was there when the event happened and knew Daniel was innocent of what the Chef from Cypress Court (Cypress Court is where the Slice bar resides in) was accusing him of because he heard what he was accused of as the Plaintiff was there, the Plaintiff notified Matthew Stober at this time of phone conversation that the Plaintiff was also aware of a meeting between managers from the Food and Beverage Department and that they had a meeting which one of the topics discussed was about terminating employees with the Family and Medical Leave Act and had this knowledge because Daniel and the Plaintiff were warned two days earlier from another manager within the Food and Beverage Department, Matthew Stober admitted such a meeting took place and that a woman from Human Resources by the name of Lynn led this meeting. Raymond Sullivan in this same phone conversation told him that he heard two people were discussed who had FMLA in the Cypress Court venue and asked Matthew Stober if he the Plaintiff was next to be terminated.

42.       On or around November of 2007, two days later after being terminated by the Chef in Cypress Court, Daniel the Pizza Cook returns to work and notifies Raymond Sullivan that he was found to be wrongfully terminated.

43.       On or around December 10th of 2007, Raymond Sullivan received a letter from the Investigator from the Nevada Equal Rights Commission that Raymond Sullivan's case was accepted and investigation was under way, Raymond talked to an attorney named Richard Seagerblom and this attorney told him to take the latter and show the person or persons you feel is discriminating and harrassing you the letter and notify your intentions, Raymond Sullivan did as suggested by attorney and notified Matthew Stober that the Plaintiff took actions against Caesars Palace and

19

members of the beverage department including Matthew Stober himself for the event of wrongful attendance points  and continued unfair treatment and discrimination because of his disability.

44.      On or around December 31st of 2007, Raymond Sullivan was told by Yvonne Ambis that she too was disciplined by Caesars Palace management for a no-call/no-show for not following the two step process of using her FMLA Leave and notified Raymond Sullivan that she was only given one attendance point for the same violation and Raymond Sullivan told her that was not fair as Caesars Palace management gave him six attendance points for the same violation and she at that time had the disciplinary action form with her and had shown the Disciplinary action form for Yvonne Ambis's to the Plaintiff, further more Yvonne Ambis notified Raymond Sullivan that she had grieved the action and had the one point removed because she had heard that other staff did not get attendance points for the no-call/no-show violation because they had FMLA and gave notice, evidence of this is in the form of witness to Yvonne's grievance and her disciplinary action form, this is further evidence supporting that Raymond Sullivan was treated differently than anyone else at Caesars Palace and shows as evidence of retaliation and supports the Plaintiff's original complaint with the Nevada Equal Rights Commission that the Disciplinary Action as suspected was used to Discriminate and/or retaliate against the Plaintiff see also original Nevada Equal Rights Commission charges and the entry of above topic and feeling the action for that date was to be used against him in the future in the form of retaliation to attempt to terminate him and also see action taken on May 1st of 2008 to further support his original claim(s).

45.      On or around March 14th of 2008, a grievance was heard in a federally protected grievance hearing:

Representing Plaintiff,

    Raymond Sullivan, Plaintiff, member of Bartenders Union Local 165,

    Benny Amin, Bartender's Union Local 165 Shop Steward,

    Mike Coffman, Bartender's Union Local 165 Representative,

    Rene Lousiani.  Bartender's Union Local 165 Shop Steward,

Representing Caesars Palace,

    Matthew Stober, Caesars Palace Beverage manager,

20

Deborah Gianini, Caesars Palace Director of Labor Relations,

In this hearing held on behalf of Raymond Sullivan's grievance complaint that Raymond Sullivan filed with the Bartenders Union Local 165 charging Caesars Palace was discriminating, harassing him and retaliating against him based on the fact that Caesars Palace treated him differently than any other employee's and used Yvonne's statement and disciplinary action to support that claim, Deborah Gianini and Matthew Stober misrepresented statement and evidence by claiming Raymond Sullivan had failed to call the manager on duty and in addition failed to call the established Human Resources FMLA message line and further stated they would not drop the attendance points based on their evidence, in this meeting Benny Amin asked Deborah Gianini if it was found that Raymond called the FMLA message hotline what would be the punishment be for not calling the Manager on Duty and Deborah Gianini said that it would be a write up and the points would be removed, the Plaintiff has a signed statement from Benny Amin as evidence to this and the list of above witnesses, also see e-mail evidence that was stated before about the e-mail that proves the party representing Caesars Palace both had knowledge that the Plaintiff called the FMLA message line, also see the entry of Raymond Sullivan notifying Matthew Stober of him going to the Nevada Equal Rights Commission about the very attendance action discussed in this hearing.

46.     On March 24th of 2008, Raymond Sullivan submitted a Vacation Request Form to take vacation starting on April 24th of 2008 and to return from vacation on May 1st of 2008. See evidence marked Payroll Request Form.

47.     On or around March 24th of 2008 as he believes he submitted for vacation the same day as receiving the following, Raymond Sullivan receives from Benny Amin two pages of printed documents that he tells Raymond that he got from Amanda Cordez and notifies Raymond he will be very happy to see this evidence, the following is what Benny Amin gave Raymond Sullivan, The printed copy has proof it was printed out by Amanda Cordez Caesars Palace assistant beverage manager on the upper right hand corner, Everything in contained in quotes are the contents of the actual e-mail itself, "From: Teresita Avila Sent: Tuesday, September 25, 2007 4:16 PM To: Matthew Stober; John King; Lisa LeRoux; Kelly Snyder; Natasha Clark; Scott Richard; Lori

Clark; Lori Pauly; Amanda Cordez; Carol Weaver

CC: Matt Krystofiak; Deborah Gianini

Subject: FMLA calls for 9/19/2007 thru 9/24/2007

(a symbol for an attached spreadsheet is present, marked Call Log New Sept 19 thru 24-0...)

lease review the attached spreadsheet. These are calls that have been logged from FMLA Call Line. If you have associates who have called out, under FMLA, and they are not listed on the attached spreadsheet, please email those names to me.

Associates are required to utilize departmental call-out procedures and call the FMLA line at 731-7358. If an associate is unaware of the additional call to the FMLA line, we would like to review the process with them.

Thank you for your assistance."

The following in quotes is what is contained in the second attached page that Amanda Cordez printed out as evidence, it is a spreadsheet with columns for |Employee Name|Emp#|Date Called Line|Time Called|Date Called For|

"Raymond Sullivan is shown twice in the Employee Name Column, 800189814 is shown twice in the column marked EMP#, 21-Sep-07 is shown twice in column marked Date Called Line, 4:01a is marked twice in the Time Called column, 21-sep-07 is in the column marked Date Called In For column one time, 20-Sep-07 is marked in the Time Called column one time"

The Plaintiff has this print-out by Amanda Cordez in possession as supporting evidence.

48.     On or around March 28th of 2008, Raymond Sullivan confronts Matthew Stober about the printed e-mail that Benny Amin gave him and showed the documents to Matthew Stober notified him that this is evidence that he and Deborah Gianini had prior knowledge that he had called the FMLA message line before the Grievance Hearing on March 15th of 2008, and therefore he and Gianini lied in the meeting.

49.     On or around April 3rd of 2008, Raymond Sullivan receives his approval of vacation

22

for the dates requested from Matthew Stober. See evidence marked Payroll Request Form that is dated approved March 29th of 2008.

50.      On April 3rd of 2008, Raymond Sullivan received a certified letter that notified the Plaintiff that his Intermittent FMLA was to expire on May 1st of 2008.

51.      On April 24th of 2008, Raymond Sullivan started his approved vacation.

52.      On May 1st of 2008, Raymond Sullivan returns from his vacation and at approximately 5:45pm Raymond is met at the employee entrance to Caesars Palace by Brianna Jackson and is demanded by her to go to the beverage office, he is then notified and given disciplinary action with Angel Bingham as acting Bartender shop-steward and witness as Raymond Sullivan is placed on Suspension Pending Investigation. See evidence of SPI on this date. FACT also see evidence of notification that Raymond Sullivan's FMLA expired on this day as well.

53.      May 7th of 2008, Raymond Sullivan accompanied by Benny Amin his acting shop-steward and witness go to Human Resources to meet with Labor Relations Councilor Todd Owen for a formal meeting where the reason for the Suspended Pending Investigation action of May 1st of 2008 is revealed, previous to this day the Plaintiff had no idea why he was Suspended, in the meeting Todd Owen notifies Raymond Sullivan that he is for sure to be terminated by the time this meeting is over, Todd Owen anounces to both Plaintiff and his shop-steward that Raymond Sullivan is being processed for termination because he had violated the no-call/no-show policy not for one day but two in a row and Todd Owen states that because each day gets six attendance points awarded bringing it to a total of 12-points of attendance that qualifies Raymond Sullivan as an instant termination, Raymond Sullivan asks Todd Owen to show what dates he is talking about on a calendar and Todd Owen reveals the dates are for April 24th and 25th of 2008, Raymond Sullivan then notifies that there is an error made because he was on approved vacation for those two days, Todd Owen says this was thoroughly investigated and demands to see the proof that Raymond Sullivan was on approved vacation, Raymond Sullivan replies that he had no idea before this meeting that he was being terminated for taking a vacation otherwise he would have brought the evidence in and told Todd Owen that the evidence was at home and asked Todd Owen that since we are in Human Resources can you not double check the computer records that the vacation was

23

approved and notified Todd Owen that it was approved by Matt Stober, Todd Owen informed Raymond and Benny Amin that nothing was on the system that showed Raymond had approved vacation, Raymond then notified Todd Owen that he also had a vacation paycheck that was approved and could he verify by calling them, Todd Owen got on the phone and called someone and according to Todd Owen it was payroll on the other line and he said that no they had no record either, Todd Owen then announced that Raymond Sullivan had until noon the next day to come up with his evidence of approved vacation or he would be terminated.

54.     May 8th of 2008 11:55am, Raymond Sullivan returns to Human Resources and produces evidence of approved vacation as promised before noon, Todd Owen when he sees Raymond says sarcastically "Oh, I don't need to see your papers,you didn't have to come in after all, I found the approval records on the computer, well you better get back home and get ready because you have to be back here in uniform by 6pm and you don't want to be late and get attendance points", Raymond Sullivan did return to work that night in uniform by 6pm.

55.     On May 15th of 2008, A new attendance policy went into effect a week or two earlier about having to clock in and out within 7-minutes of the hour we start or finish our shift, on this day I was trying to follow the new policy but as I was closing my bar at the Slice Bar I had a guest who did not want to close her credit card yet and leave, I had spoken to Kelly Snyder and notified her I was having troubles getting out on time tonight, Kelly Snyder said no problem just tell the manager on duty about it and it will be ok as she was leaving for the day, I finished my shift at 2:35am only 35 minutes over and I called the beverage manager on duty who was Vince Lau and he said he would meet me at the time clock, shortly he arrived with Brianna Jackson and I told them what happened and Brianna told me in a real rude manner that she would approve "This day only!"and after this day I was ordered by her to clock out before 2:07am every night and then do my closing duties and was instructed to not ask again for overtime from a manager ever again or face the steps of discipline in the memo which states up to termination, this event took place at a high level traffic area for employees and several staff was there that witnessed it including assistant beverage manager Vince Lau, Later around June 6th of 2008 another bartender named Frank told me that everyone was getting overtime approved by Brianna Jackson and he never had a problem with getting overtime with her either and he got it all of the time, I worked for some time off the clock after hours as ordered by Brianna Jackson, this is an example of what Lisa LeRoux allowed her

24

staff to do to me. Brianna Jackson was a new manager and already she was treating me differently.

56.     June 8th of 2008, Raymond Sullivan asks assistant beverage manager Kelly Snyder what is going on with his paycheck for back-pay for the week of his wrongful suspension, Kelly informs him that Matthew Stober has approved it and should be on the next paycheck.

57.     On or around June 11th of 2008, Raymond Sullivan filed a complaint with the Bartenders Union Local 165 regarding the loss of his shift, continued discrimination, retaliation, harassment, and the fact the beverage department still had the attendance points for September 21st of 2007 on record and were using against him on May 7th in the meeting with Todd Owen. Raymond has a discussion about the complaint with Bartenders Union Representative Mike Coffman, Raymond tells Mike Coffman that he is seeing a pattern of Matthew Stober retaliating against him and a pattern from the Caesars Palace all together of retaliation and attempts to terminate and feels that they are trying to terminate him like he mentioned in his Nevada Equal Right Commission complaint that that was exactly what he thought was going to happen, Raymond further notifies that he has not yet received his paycheck for the time he was wrongfully suspended and Raymond asked Mike Coffman to make a demand of Caesars Palace to separate his pay into two separate checks, one for hourly pay and one for back pay on tipped income lost.

58.     On June 15th of 2008, Raymond Sullivan finally gets his back pay well beyond the allowable time frame to pay for wrongful suspension, suspiciously Raymond's checks are separated as requested but when picked up the guard notified Raymond that he was to call Todd Owen to tell him that Raymond picked up his pay checks and told Raymond he had to sign for them and informed him that he had never been requested to do anything like that before, later Raymond discovers that one of his checks is dated and time stamped May 22nd of 2008, what was odd about that was Raymond made the special request to separate them on June 13th of 2008 21-days after this check was dated and time stamped, The Plaintiff has this paycheck in his possession as evidence.

59.     In the early part of the year of 2008 around March, Mike Morelli a bartender at Caesars Palace and many others had their shifts saved by Matt Stober, John King and Lisa LeRoux, specifically Matt Stober saved Mike Morelli's shift so he could remain at the SeaHorse Lounge and keep the majority of his shift intact, it is the Plaintiff's belief that Mike Morelli and Matthew Stober

25

are close friends, later to note Raymond's shift was eliminated and could have been saved such as Mike Morelli's shift was and this shows favoritism and discrimination, Raymond's shift elimination is documented later.

60.     On June 20th, 2008, Raymond Sullivan's shift was eliminated from the Slice Bar and he was moved to another shift of considerably less tipped income issued by Matt Stober and John King and the Plaintiff was told by Matt Stober that the elimination was approved by Dean Allen and Deborah Gianini, This was the first bartender shift to be eliminated in a long time and believes that no other bartender shift had been eliminated since before the Plaintiff went to the Nevada Equal Rights Commission back on November of 2007 or later and had knowledge that many shifts had been saved for other bartenders and beverage staff by Matt Stober and John King by partially changing their shifts but maintaining the majority of the employees original shifts, Such has been done for Mike Morelli another bartender whom his shift was saved by such actions as well as many others, Raymond Sullivan feels that they could have done the same but instead they replaced his shift with bartenders of less seniority and steady extra-staff whom steady-extra staff do not hold any shift seniority at all, the Defendants had not eliminated any other bartender shifts until on or around one month later, approximately one month and a day Raymond Sullivan was made aware that 4 out of 5 staff that had their shifts eliminated had Family Medical Leave Act and believed that they were being singled out by the beverage department and Caesars Palace, later about six weeks after his shift he heard that it was 5 out of 5 staff members lost their shifts who all had Family Medical Leave Act and again others who did not have Family Medical Leave Act had their shifts altered by Matt Stober and/or John King whom both of them have been rumored by staff to disliked people with Family Medical Leave Act and this was a form of retaliation against people with Family Medical Leave Act and people with disabilities, the Plaintiff has the evidence in possession marked INEROFFICE MEMORANDUM of the shift change action and the document is signed by Matthew Stober, dated 6/20/2008, marked effective 6/27/2008, and was witnessed by John King.

61.     On or around June 22nd of 2008, Raymond Sullivan files a complaint against Caesars Palace for discrimination, wrongful shift elimination because others were having their shifts saved and he felt he was being retaliated against because he went to the Nevada Equal Rights Commission, Raymond Sullivan went to the Bartenders Union Representative for Caesars Palace issues Representative Mike Coffman on how he was being treated by Caesars Palace and shows

Mike Coffman a document that he has drafted titled "Timeline" that he had given to the FBI to show how he felt he was being treated unlawfully, Mike Coffman states he does not have the time to read it but is willing to later, Raymond Sullivan states that he has an extra copy because he was going to send a copy to the IRS but the FBI Duty Agent said they could just fax it over to the IRS, Raymond Sullivan said he was willing to let him temporarily keep a copy for awhile but had to promise not to give any details to any Caesars Palace employee and specially any management about any details in it, Mike Coffman agreed to not give the document to anyone else or share the info, Raymond gave Coffman a copy to read because he felt his Union Representative needed to know the truth of what was going on, Raymond Sullivan went into further detail of why he was filing the discrimination and harassment and told Coffman it all started with his taxes and the combination of him having a mental breakdown in 2003, and that others were having their shifts saved and that Raymond Sullivan was experiencing a great deal of grief from beverage management and human resources including Deborah Gianini, he told nore to Coffman about how the printed e-mail that had Deborah Gianini and Matthew Stobers name on it was evidence that they conspired to terminate him, Mike Coffman said he understood that the complaint was far more than a gripe about his shift being eliminated.

62.    On or around July 23rd of 2008, Raymond has a grievance hearing with Director of Labor Relations Deborah Gianini and the only other person there is Bartenders Union Local 165 Representative Mike Coffman, when Raymond Sullivan first walked in he came into the meeting room from behind Deborah Giainini and saw in her hands the document he gave to Mike Coffman titled "Timeline" in Deborah Giainini's hands, Raymond was devastated immediately and felt grief by the apparent action that Mike Coffman had betrayed Raymond's confidence, Mike Coffman as soon as Raymond stepped into the door asked Deborah Gianini "what is this hearing all about?" and Deborah Giainini stated "it looks like Raymond is grieving his shift elimination", Mike Coffman raised his hands and said "Now Raymond we went over this, I thought I told you that there is nothing you can do about it as there are lay-offs at this time", Raymond Sullivan decided since Deborah Giainini had the document in her hand that said everything and had witnesses names that could injure Raymonds case later on he might as well inform Deborah Gianini that he did go to the FBI and the IRS about the taxes and the fact that she knew all along that he had called and notified Human Resources on September 21st of 2007 that he was using FMLA and that she went and charged him for a no-call/no-show anyway and lied in a grievance hearing, Mike Coffman got up

and moved towards the door and opened it and said "Well where is the cavelry then, you don't need me to represent you, so where are these FBI guys, they coming soon?", Raymond Sullivan felt totally defeated and Deborah Gianini at that time slammed her hand down like a gavel and said this hearing is over.

63.     On August 18-20th[th] of 2008, Raymond had not slept well for weeks and it was catching up to him, he was going 2-3 days without any sleep and was having nightmares that made him vomit acid again in his sleep, Raymond Sullivan called into work sick three days in a row.

64.     On August 23rd of 2008, Raymond Sullivan had a nervous breakdown and bemieves it was because of Bartenders Union Local 165 Representative Mike Coffman's betrayal and the knowledge that Raymond was most likely going to receive more harassment then ever before, He went to see a doctor and the doctor gave Raymond Sullivan a completed Family and Medical Leave Act form WH-380 for Intermittent FMLA, The doctor had forgotten to give Raymond the requested letter that would allow him to return to work, Raymond went to Caesars Palace and went to see Human Resources Representative Jere Stuhlmiller and gave him the FMLA WH-380 and notified him that he would not be working this day as dated above, Jere told Raymond he had to have a note also from his doctor saying he could return to work, Raymond said his doctor forgot to have it waiting for him at the reception desk where he picked up the FMLA from the doctor and was notified the doctor was now with a patient and he would fax the note to return to work the next day, the Plaintiff has the FMLA WH-380 from his doctor in possession as evidence.

65.     From the date of August 23rd to September 5th pf 2008, the Plaintiff was instructed to call the Manager on Duty in his department every day and told to state he was using his FMLA leave until further notice and this instruction came from Jere Stuhlmiller, Raymond Sullivan called every day as instructed to the manager on duty.

66.     From the dates of August 23rd to September 6th of 2008, Raymond Sullivan tried to contact the doctor he had seen and was never able to contact him nor did the doctor ever call him back, Fact, this doctor did not contact Raymond Sullivan but he did do as requested by Raymond Sullivan to send a fax to Caesars Palace saying Raymond Sullivan could return to work on September 5th of 2008, Caesars Palace did receive this notice that Raymond Sullivan could return to

work as evidence shows but they chose not to tell Raymond Sullivan that they received the note and kept Raymond in the dark and continued to tell him that he needed to get that note saying he could return to work, This is where the Plaintiff believes that Caesars Palace was again misrepresenting themselves in an attempt to take advantage of Raymond's disability and an attempt to force termination of the Plaintiff by denying to have received documents from doctors for a period of more then 30-days from August 23rd 2008 that would be past the policy of allowed leave without permission.

67.     On September 5th of 2008, Raymond Sullivan called the Manager on Duty as he was instructed and Vince Lau answered the manager on duty cell phone as he had most of the Plaintiff's FMLA call out from Aug.23-Sept. 4, Vince Lau notified Raymond Sullivan that he no longer had to call the manager on duty as Jere Stuhlmiller had of this date effective immediately put him on block leave and would no longer have to call. Fact, the Plaintiff has in evidence a copy of a fax from his doctor that states Raymond Sullivan could return to work on the date of the fax and this fax was marked sent September 5th of 2008  and received by Caesars Palace Jere Stuhlmiller this evidence was found in the doctors files on September 22nd and obtained again in the personnel files the Plaintiff won in settlement to have the Union Attorney's copy of all subpenaed files on October 13th of 2009.

68.     On or around September 5th of 2008, the Plaintiff called Assistant District Director Susan Nern to ask why his employer would request of him to produce a second FMLA WH-380 when the Plaintiff was still out on that same leave and Susan Nern did clarify one topic though as she did say that the employer can not make a request of the Plaintiff to obtain a second FMLA form WH-380 for the same leave of absence as that was redundant and if one is accepted on the 23rd of August and you are still currently out on that leave they can't ask for another for the same leave, that does not make sense, when Raymond Sullivan said Jere Stuhlmiller said something about block leave and intermittent leave were two different things, Susan Nern said only one FMLA is required and never heard of this before requiring two FMLA's for one leave and said he is in the wrong.

69.     On September 6th of 2008, Raymond Sullivan for the first time does not call the manager on duty to inform the use of his FMLA as per Vince Lau's instruction that he no longer had to the day before.

70.     On September 7th of 2008, Raymond Sullivan calls the manager on duty and Vince Lau picks answers, Raymond asks Vince if he had heard anything about his doctors faxing that letter to return to work yet, Vince Lau says that he is glad that Raymond had called as their was an accident or some kind of mis-communication between Jere and Vince, Vince said that Raymond was not allowed to stop calling the manager on duty, Raymond asked how that happened, Vince said he was in deep trouble and got reamed for telling Raymond that he no longer had to call the manager on duty, he said that Matthew Stober was pissed off at Vince, Raymond asked was he going to be charged a no-call/no-show for not calling in, Vince Lau said no but they really wanted to, Vince further stated that he told Matthew Stober that he had told Raymond that he didn't have to call the manager on duty phone anymore the day before, Raymond told Vince thanks for being honest, Vince said he would never lie and out someone out of work who was innocent I could never live with myself if I said I had not told you to not call anymore, Vine Lau then said that Raymond had to call Jere Stuhlmiller,

Raymond called Jere and asked what was going on first I hear I no longer have to call the manager on duty line and then again I do, Jere said well you no longer have to now, you can be sure now that it is ok, We will put you on leave until we receive a note from the doctor, Raymond Sullivan said he can't believe that his doctor wouldn't send the doctors note or return his calls about it, Jere said dont worry I deal with doctors all the time and they are always hard to nail down.

71.     On September 11th of 2008, Raymond Sullivan received a call at home and let it go to voice box and it was from a Sylvia Ocampo who said Raymond had to call right away, Raymond got up and did so about 15 minutes after the message, Sylvia Ocampo told Raymond that he had to have his doctors note by today and Caesars Palace has not received anything from a doctor yet, Raymond Sullivan said he still did not have one but was to receive one today and needs to check his email to find out, Sylvia demanded to know if he had it right at that moment or not, she said she had to tell his department today if he had it, Raymond Sullivan said I don't know right now you just woke me up, I will go to the doctor who said he had faxed one to you if I have to today, Sylvia said you are supposed to have it by today, Raymond Sullivan said that Jere said he had 30-days from the date the leave started on the 23rd on August and Jere said if I needed an extra day in the meantime it was not a problem, Sylvia said I need to know do you have it or don't you, Raymond Sullivan said

no not in my possession at this time, Sylvia said o.k. Then I'll let your department know you are not coming in, I said this is ridiculous give me another day then as Jere said and I will send the letter to return to work later today if I get it or tomorrow if I can not get it today, I asked if she could give me can me the extra day as Jere said he would,  Sylvia said yes, she then said she had to go.

72.       On September 11th 2008, I obtained the letter and sent it to Human Resources on or around 4:20 pm and called the Human Resources number that Sylvia gave me before to let her know it had been sent, I never got a return call. I have phone records in evidence that shows I called to ask on Sept. 11 if they received the fax I sent them or not.

73.       On September 12th of 2008, Raymond called Sylvia Ocampo again and asked if she had received the letter to return to work, She interrupted and said "where were you scheduled to work yesterday?", Raymond Sullivan right away grew concerned with her tone of voice I asked "are you guys going to charge me with another no-call/no-show again?" Sylvia did not reply right away and I further went on "you guys are, arent you?" Sylvia stated I had to talk with her manager. I said "you have to be kidding me, you guys have done this to me enough times already, I have been to the Nevada Equal Rights Commission for gods sake and I hung up.

74.       On September 12th of 2008, I called my attorney and told him what had been happening and he told me to go to work with or with out a note, go right now and don't be late, they are trying to terminate you,
So that is what I did and I worked my shift for about three hours and then I got a call to go to the beverage office and I was given another disciplinary action of  Suspension Pending Investigation for a no-call/no-show and sent home.

75.       On September 18th of 2008, I received a call from Matt Stober two-hours before my shift telling me that I could return to work but it being at the last minute he found this out that he told me that he had someone already here to work my shift and I told him I could not come in because I was too far away from how to change and go to work right away. The Plaintiff has in his possession evidence of phone records that Metthew Stober called just before my shift would start, also in evidence was the fact that in an arbitration process the Defendants Matthew Stober, Deborah Gianini, Todd Owen and Caesars Palace legal council entered misrepresented attendance records

for this day of September 18th and stated that I had called in sick this day, further proof that this was misrepresented record is the fact I called out using FMLA for the 19,20,21 days of Spetember and if I had done that I would have been forced to take a leave, furthermore to support that they conspired to commit perjury on October 13th of 2009 and fraud on the court they also submitted September 15th of 2008 and said that was a day that I called and used FMLA and in evidence the Plaintiff has evidence that he was suspended for the 15th of September 2008.

76.     On September 22nd of 2008, A Human Resources Manager named Maria and Todd Owen in Human Resource treated Raymond Sullivan differently than any other employee of Caesars Palace, Maria said she would accept hand delivered medical documents on this day from Raymond Sullivan but than changed her mind and said she needed to ask Todd Owen first and when she returned from asking him in his office she informed Raymond Sullivan that it was policy to not sign employees documents and give them back to them, Raymond Sullivan was treated differently because he has knowledge that many employees have documents signed and countersigned returned to employees as proof of delivery and/or as acknowledgment that they received the papers, the Plaintiff has never heard of any other employee treated this way.

77.     On September 22nd of 2008, Raymond's General Practice Doctor takes every form of medical leave papers that Raymond Sullivan given him that Caesars was claiming to have not received over and over including the other Doctors return to work letter and sends them by fax with witness of his two assistants and himself that all was sent and received because this doctor was upset of having to send faxes to Caesars Palace and then have them claim later they did not receive.

78.     On November 20th of 2008, Raymond Sullivan was Suspended Pending Investigation on November 20th of 2008 and disciplinary action was given by assistant beverage manager Kelly Snyder and witnessed by assistant beverage manager Amanda Cordez, Kelly Snyder informed Raymond Sullivan that the disciplinary action was for exceeding his allowance of Family Medical Leave and Attendance points, Kelly Snyder was helpful and kind enough to show Raymond Sullivan his attendance records and explained the markings on it and what they meant and further helped to identify the markings by color coding the calendar with colored magic marker to help differentiate the days of FMLA used and the non-FMLA days that received attendance points and revealed that the calendar displayed that Raymond had exceeded 6 days of sick calls past his

allowance of FMLA leave and gave him a copy of that calendar used by management to record attendance before he left, Raymond Sullivan has the said calendar in his possession along with the disciplinary action form also given to him by Kelly Snyder. Plaintiff is in possession of disciplinary action forms and the attendance calendar stated above.

79.     On or around February 9th of 2009, A grievance hearing takes place and in the hearing there are to be two hearings on Raymond Sullivan's behalf, first is to be the discrimination charge, 2nd is the Wrongful Termination charge to be grieved,

Before the meeting Raymond Sullivan was told the day before by Benny Amin that Mike Coffman was going to let Raymond defend himself as he most often did anyway as Mike Coffman was often reluctant to represent Raymond and Raymond knew more about discrimination law and FMLA law then Coffman apparently did, When Raymond met the Union Representatives and Benny the shop-steward he was given news that totally tore apart Raymond's legal strategy, Mike Coffman notified that Deborah Gianini has entered a new rule that he inform is a first for him in a grievance hearing held at Caesars Palace, Mike Coffman informs Raymond Sullivan that he is not allowed to talk at all and has to write every question down and have Mike Coffman read the question to the board for him, Coffman told Raymond that if he said one thing that Deborah was going to throw the case out, the Plaintiff was devastated and had no idea how he was going to represent himself in this fashion at short notice, Raymond Sullivan had been to numerous grievances in the past and was never ordered to not be allowed to talk before, Benny Amin also admitted this was a first for him as well. All of Raymond's notes that he brought with him were shorthand and more of a reminder of events as he knew what to say and ask of the board,

Raymond was even further defeated to find out that the primary individuals that he filed the grievance against were going to be the acting judge and jury, Deborah Gianini was one of who he named as a primary character in his grievance in the charge of Discrimination, harassment, retaliation and misrepresentation of documentation and statement and Caesars Palace elects to have the very same person charged act as the person to be the "The Judge and Jury" of her own charges in this hearing shows how Harrah's Entertainment and how Gary Loveman really treats discrimination,

As expected Deborah Gianini finds that the Union is ill prepared in this case against her on charges of discrimination, misrepresenting evidence, harassment and retaliation and she states the reason is because the Union is taking too long and dismisses the case and walks out and Todd Owen takes

33

over as "judge and Jury" on the hearing for the charge of wrongful termination and he too is on the list for the same charges Raymond was alleging against Deborah Gianini, Raymond was by this time feeling sick from his emotional illness and could not write as he gets dyslexic when nervous and loses focus and concentration, Raymond gets one statement out and says your attendance records are wrong, you counted my FMLA days off and you guys are supposed to count only 5-work days per week out not seven and even by your own record it shows I am not 6 days over my allowence by your own records it shows I am only five hours over the FMLA allowance, Todd Owen states "if this were only about five hours you would not be here, we give all of our employees at Caesars Palace up to one extra day beyond their allowance as a courtesy", I was told that I was too far over to argue about it and this case was over. Fact I was discriminated by Todd Owen when he said all employees are given an extra day over their allowance of FMLA because when they discovered later that their records did show only five hours over as I said it was that statement Todd had said about being over a day for all employees did not apply to me, later they discovered that I was well under 480 hours of FMLA used and had about ten attendance points not 6, 7, 12, 16 like I had heard them say on several different times and for a company that has an active Nevada Equal Rights Commission investigation going on about the very individual they are terminating you would think they would make sure they are in the right and even more so since Gary Loveman never got back to me so I guess his investigation was still underway as well.

80.     On October 13th of 2009, Raymond Sullivan had appeared for his arbitration before the honorable Philip Tomoush as part of the Plaintiff's party against Caesars Palace as the Defendant in an action to Plaintiff's claims of Caesars Palace having wrongfully terminated Raymond Sullivan on December 1st of 2008 by using misrepresented evidence of attendance records and medical records and FMLA Law to achieve wrongful termination and as an act of retaliation,

In attendance for the Plaintiff:   Raymond M. Sullivan as Plaintiff,

                                   Benny Amin, Union and Caesars Palace shopsteward,

                                   Mike Cianci, Union Representative,

                                   Mike Coffman, Union Representative,

                                   Sarah (last name unknown) Union legal council,

In attendance for the Defense:   Deborah Gianini, Caesars Palace Director of Human Resources.

Matt Stober, Caesars Palace Beverage Manager,

Todd Owen, Caesars Palace Human Resources LR/ER councilor,

Mark Ricciardi, Caesars Palace's legal council,

In attendance was also the honorable Philip Tamoush, Arbitraitor and a court stenographer.See Claims violation of "COLOR OF LAW".

81.    On March 2nd of 2009, Raymond Sullivan received the Nevada Equal Rights Commissions findings and in the findings of Compliance Investigator Jesse E. Mosley he states "Investigation shows you were suspended on May 1, 2008, however, this was later reversed and considered void. In addition , documentation shows that the employer has treated you fairly in accordance in regards to their attendance policy. During the course of this investigation, the commission requested preferential treatment in that the Respondent allow additional time for you to provide the employer with the documentation to show that you were approved for the time taken off in October of 2008. However, no documentation you presented substantiated that you had approval for the days you missed.

Additionally, the documentation shows that you received attendance points during November 2008 which caused you to be suspended pending investigation. These additional points put you over the limit allowed by policy and are the reason you were discharged from employment effective December 1, 2008."

The above document that the Plaintiff has as evidence in this case shows that the investigator was given misrepresented attendance records by the Defendant to have come to such conclusion and also was under false assumption by misrepresentation by the Defendant that a 2nd Family Medical Leave Act form WH-380 was required and requested on August 23rd of 2008 when it was not required as Raymond Sullivan was out on one leave that started August 18th and did not return until September 12th of 2008 as shown by actual attendance calendar records and disciplinary action documentation that Raymond Sullivan did not return until September 12th of 2008 as by Family Medical Leave regulations the person who has Family Medical Leave is only required to have one FMLA WH-380 for any one leave, the Defendant Caesars Palace wrongfully demanded Raymond Sullivan to obtain a 2nd one for the same leave and the Investigator was misled by the Defendant and by doing created an unfair advantage in the result of the investigation, it is the Plaintiff's belief that this was intentional misrepresentation by evidence of documented history as the Defendant was made well aware of what they were doing by the Plaintiff and the Bartenders Union Local 165 many times before and after the

35

decision made by the Nevada Equal Rights Commission compliance investigator and further had ample opportunity to correct such a serious offense, also Caesars Palace had prior knowledge this was misrepresented information that they gave to the investigator under oath of perjury and as a party greater than two people with that knowledge and acting as a party willfully and with total disregard for what they were doing to the Plaintiff by creating additional emotional harm and financial damages and the obstruction to prevent the Plaintiff from receiving justice to the Plaintiff satisfaction, rather than give rightful satisfaction to the Plaintiff who is a citizen of the United States they took action by submitting the misrepresented documents and statements as evidence and never at any time later did they retract and/or admitted to their actions to the Nevada Equal Rights Commission, therefore it is the Plaintiff's belief that Caesars Palace and Harrah's Entertainment and the party or parties within Caesars Palace and Harrah's Entertainment conspired to commit perjury against the United States.

82.     Many if not all shop-stewards have told Raymond Sullivan at one time or another that they believe that Caesars Palace beverage administration has an agenda of some sort to harass and retaliate against those who have Family Medical Leave Act and of those who have disabilities. Many of the Union shop-stewards who work in Caesars Palace and a few Representatives have have also made statements that Caesars Palace and Harrah's Entertainment misrepresent facts to gain favor in contractual arbitration and hearings all the time against people who have disabilities and even those who do not have disabilities but want them terminated for other reasons outside of job performance of they just dislike the employee, it is the Plaintiff's belief that it is common knowledge that if you ever stand up to Harrah's management for anything at all including fighting for your civil rights they will retaliate.

83.     The Plaintiff claims that in third party statement he had heard that Cocktail Waitress Manager John King has been accepting bribes of $1,000 in one rumored case and recipient of gifts such as a watch worth $3,000 from an employee, this rumor was said that these gifts were to keep their shift and/or keep in his good favor or an exchange to award a shift to employees of recently opened and available shifts to his waitress staff and in this rumor those shifts he has been awarding were shifts that had previously belonged to many employees that were covered by the Family and Medical Leave Act and the employees who lost their shift felt it was because they had FMLA, the Plaintiff is concerned and feels grief because he feels that this behavior may have been a factor in his case as some of the beverage management may have been awarded promotion for similar acts

against him and/or including such an event as his termination on December 1st of 2008 and other similar acts against him, for this and other actions that he has been made aware of on the property of Caesars Palace and other properties in the Las Vegas area that Harrah's Entertainment manages and the Plaintiff believes that they are actively campaigning and promoting discriminatory behavior against those with disabilities and those who use or have Family Medical Leave such as the Plaintiff has experienced.

84.     Lisa LeRoux treated Raymond Sullivan differently by refusing to pay him overtime, by calling him derogatory names such as Psycho and Crazy, she would not investigate claims of management and staff harassing Raymond Sullivan, Lisa LeRoux would not help Raymond Sullivan straighten out the tax problems that were created by her department in which she is the Director of, instead Lisa LeRoux in fact hindered process rather than help resolve the problems. new discovery of evidence was recovered when Raymond Sullivan obtained his personnel file in settlement on October 13th of 2009 that shows in the year of 2001 which is the year that the errors were most severe it was discovered and found a document with Lisa LeRoux's name on it as Department Head was altered and can be seen under the black marker that was apparently an attempt to alter the document to be unreadable was Raymond Sullivan's real shift of Cafe Lago grave yard 2am-10am which is the real shift that was failed to be reported to the Internal Revenue Service and instead misrepresented income and job position and station was submitted to the Internal Revenue Service and that misrepresented information that  was substituted for truth was Raymond Sullivan was a Wine Sommeleir on swing shift in Palace Court Restaurant in 2001 which was fictitious for one thing because Palace Court Restaurant was closed in 1999, furthermore the shift that was misrepresented was a management position and not one that Raymond Sullivan was qualified for and furthermore was one of the highest tipped allocation positions in Caesars Palace at that time. The Plaintiff has possession of a document supplied by the IRS that shows misrepresented records and statements was supplied by the the Defendant and also has in possession a document that has been altered with black marker over the areas of the document where job title is reserved for (part of what looks like it says Cafe Lago can be made out Still), the check box where it is reserved for shift day-swing-grave the box that appears to say Grave is blacked out, black marker is also present over the area reserved for the shifts days off, and this document where it is reserved for Department Head's signature is signed Lisa LeRoux, the Plaintiff has complained numerous times to Lisa LeRoux about 2001 and the wrong data submitted to the

Internal Revenue Service as proof is documentation and many witnesses have knowledge that the Plaintiff had experianced this problem and Lisa LeRoux in the Plaintiff's belief she should have done something about it and questions why Caesars Palace and Harrah's Entertainment with all of its false claim to be fixing the problem never did and hindered one of the most damaging things in the Plaintiff's life was to create the financial damages and most of all the threats and false termination and creation of and promotion of conflict with co-workers because of one simple correction was neglected and the Plaintiff was on the wrong end of unwanted and undeserved discipline and treatment.

## E. CLAIMS

### FIRST CAUSE OF ACTION
### Violation of Conspiracy to Commit Perjury
### U.S.C. Title 18, chapter 47 §1001

85.     The defendants Matthew Stober, Deborah Gianini, Jere Stuhlmiller, Sylvia Ocampo, Lisa LeRoux and Todd Owen with knowledge of the meeting and its purposes, entered into an agreement to deprive the plaintiff as a citizen of the United States of privileges by entering willfully under oath misrepresented documentation and statements to the Nevada Equal Rights Commission to gain favorable outcome in a federally protected investigation.

86.     The defendants Matthew Stober, Lisa LeRoux, Deborah Gianini, Jere Stuhlmiller and Todd Owen with knowledge of the meeting and its purposes, entered into an agreement to deprive the plaintiff as a citizen of the United States of privileges by entering willfully misrepresented documentation and/or statements to the Federal Department of Labor to gain favorable outcome in a federally protected investigation under oath.

87.     The defendants Matthew Stober, Deborah Gianini, Sylvia Ocampo, Jere Stuhlmiller, Todd Owen, Lisa LeRoux and Mark Ricciardi with knowledge of the meeting and its purposes, entered into an agreement to deprive the plaintiff as a citizen of the United States of privileges by entering willfully misrepresented documentation and/or statements to the Bartenders Union Local 165 to gain favorable outcome in a federally protected arbitration process.

88.     The defendants Matthew Stober, Deborah Gianini, Lisa LeRoux, Jere Stuhlmiller, Sylvia Ocampo, and Todd Owen with knowledge of the meeting and its purposes, entered into an agreement to deprive the plaintiff as a citizen of the United States of privileges by entering willfully misrepresented documentation and/or statements to the Bartenders Union Local 165 to gain favorable outcome in a federally protected grievance hearing.

89.     The defendants Matthew Stober, Deborah Gianini, Todd Owen, Sylvia Ocampo, Jere Stuhlmiller with knowledge of the meeting and its purposes, entered into an agreement to deprive the plaintiff as a citizen of the United States of privileges by entering willfully misrepresented documentation and/or statements to the Bartenders Union Local 165 to gain favorable outcome in a federally protected grievance hearing.

## SECOND CAUSE OF ACTION
### Violation of the Family Medical Leave Act

90.     The Family and Medical Leave Act was violated repeatedly as stated above in almost if not every way FMLA could be violated against the Plaintiff, Interference of FMLA, Denial of use, Discharged for having FMLA, Discriminated for having FMLA, and any others the court in this case will allow.

## THIRD CAUSE OF ACTION
### Violation of the Americans With Disabilities Act

91.     The Plaintiff was assessed and determined to be covered by the American's with Disabilities Act by the Nevada Equal Rights Commission as part or in partnership with the EEOC and believed the Defendant to therefore be informed by the Nevada Equal Rights Commission and/or the EEOC that he was covered by the Americans With Disabilities Act therefore having knowledge and the Defendant also had prior knowledge of the Plaintiff's disability as they are party in discovery of the disability the night the Defendant sent Raymond Sullivan to the hospital back in February of 2003.

## FOURTH CAUSE OF ACTION

### Conspiracy to threaten and intimidate

### 18 U.S.C. section 241

92.      The Plaintiff was intimidated, threatened and emotionally injured by the repeated actions of Todd Owen, Deborah Gianini, and Matthew Stober, Lisa LeRoux and Jere Stuhlmiller

## FIFTH CAUSE OF ACTION

### Violation of Civil Rights

### 42 U.S.C.

93.      On or around May 12th of 2008, When the Plaintiff filed a complaint with the Federal Department of Labor about unfair deceitful practices of misrepresenting attendance record keeping and not paying him for overtime when Caesars Palace would pay others for overtime Assistant District Director Susan Nern of the Federal Department of Labor told the Plaintiff that he had a choice, he could either file for overtime violations or FMLA violations, the Plaintiff was adamant that he wanted both to be looked into stating he had around 1400 pieces of time-stamped register tape and paycheck stubs as evidence that he was never paid for overtime and the FMLA violations were of serious nature because he believed he had been denied the use of FMLA and attendance records were being misrepresented in Federally protected grievance hearings to gain a favorable decision.

94.      On or around June 2nd of 2008, When the Plaintiff called Assistant District Director Susan Nern of the Federal Department of Labor about any findings she told the Plaintiff "I have not looked at your evidence, I do not have to, I can make my decision by just looking at my computer and see that Caesars Palace has a sterling record." she further stated that "the Family Medical Leave is not an accuse for attendance" and disregarded the Plaintiff plea to understand the nature of his illness and the stressful situation he was in with his employer, the Plaintiff told Susan Nern that he had at one time felt so depressed, intimidated and harmed by his employers actions that he had thoughts of suicide back in 2003 and frequently went without sleep for periods of up to five or more days without sleep and is still currently being treated for his emotional illnesses and sleep disorder and Susan Nern then threatened the Plaintiff by stating "I am a powerful woman and when I make a decision other agencies will not regard your cases as plausible.", the Plaintiff believes that Susan

40

Nern to judge him based on how he used his Intermittent FMLA without looking at evidence in an investigation and passing such judgment souly based on her unqualified diagnosis on how he should use his Intermittent FMLA over the diagnosis of a certified Medical Doctor who knew the Plaintiffs illness in detail and has legally and professional ability to diagnose such illness where Susan Nern does not, the Plaintiff believes that Susan Nern unfairly without qualification diagnosed him and judged him with unfair and unethical prejudice.

## SIXTH CAUSE OF ACTION
### Violation of Color of Law
### Title 42 U.S.C., Section 242

95.      Plaintiff filed a complaint with the Federal Department of Labor and his rights were deprived by an officer within the Federal Department of Labor by Assistant District Director Susan Nern. Whereby Susan Nern placed a freeze on all accepted complaints on the Plaintiff and the Plaintiff was disallowed to file a wrongful termination complaint with the State or the Federal Department of Labor as ordered by Susan Nern when the Plaintiff attempted to file on or around December 4th of 2008, Susan Nern's action deprived the Plaintiffs right to justice and caused unnecessary grief and damages to the Plaintiff.

## SEVENTH CAUSE OF ACTION
### Fraud On The Court

96.      On October 13th of 2009, the Plaintiff Raymond Sullivan believes that "Fraud On The Court" occurred on this day by the Defendants legal council Mark Ricciardi by misrepresenting evidence and fact and this misrepresentation of evidence in that court was supported and supplied by with knowledge by all members the Defenses legal council Mark Ricciardi was representing and in the said membership were the following Todd Owen, Deborah Giainini and Matthew Stober in the arbitration process on this date of October 13th of 2009, the Defense legal council Mark Ricciardi supported the original defenses misrepresented attendance record keeping and misrepresented medical information and FMLA law that led to Raymond Sullivan's wrongful

termination and when the Plaintiff's party and legal council countered with evidence that supported Raymond Sullivan's claim that the attendance record keeping was in fact misrepresented by the Defense and was cause of prior denial of proper justice in judgment for the Plaintiff Raymond Sullivan's wrongful termination on December 1st of 2008 and again in a federally protected grievance hearing on February the 15th of 2008, and used again in state and federal investigation process or processes to gain an unfair advantage to gain a favorable outcome, the defense council Mark Ricciardi then entered new misrepresented evidence or attendance records, furthermore the Defense in the process of arbitration did not honor the Bartender's Union Local 165 subpena to submit all employee personnel files and medical records from Caesars Palace which failure to do so also voided the settlement between the parties as part of the settlement agreement the Plaintiff Raymond Sullivan was to receive all subpenaed files the Bartenders Union Local 165 and their legal council was given immediately at the time of settlement agreement, yet harassment files and medical files were omitted from the subpenaed documentation, these actions as stated above caused the Plaintiff grief as he felt that justice was not being fairly served once again as the defense and its council misrepresented itself to effectively give them the unfair appearance that they had a better defense and the Plaintiff felt that his council would have had more confidence in Raymond Sullivan's case and feeling intimidated based on that and the belief that the Defense had successfully deceived other courts and legal process with the same or similar  misrepresented evidence and statement that he strongly believes that he would have made a different agreement of settlement and/or refused to settle at all if the Plaintiffs council had not displayed a willingness to deceived the court.

The basic standards governing fraud on the court are reasonably straightforward. As set forth in Cox v. Burke, 706 So. 2d 43, 47 (Fla. 5th DCA 1998):

```
The requisite fraud on the court occurs where "it can be
demonstrated, clearly and convincingly, that a party has sentiently
set in motion some unconscionable scheme calculated to interfere
with the judicial system's ability impartially to adjudicate
a matter by improperly influencing the trier of fact or unfairly
hampering the presentation of the opposing party's claim or
defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st
Cir. 1989).... The trial court has the inherent authority, within
the exercise of sound judicial discretion, to dismiss an action
when a plaintiff has perpetrated a fraud on the court, or where
a party refuses to comply with court orders. Kornblum v.
Schneider, 609 So. 2d 138, 139 (Fla. 4th DCA 1992).
```

42

## F. REMEDIES

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment on his behalf on all counts contained herein, and grant him the following relief:

(a) Declaratory judgment that Defendants' conduct violated Plaintiff's rights. In particular, that the Court declare the actions of Defendants complained of herein to be in violation of: the Americans With Disabilities Act of 1990, as amended, 42 U.S.C.,; The Family and Medical Leave Act of 1993,; Conspiracy to commit perjury U.S.C. Title 18, chapter 47 §1001,; Violation under Color of Law, Title 42 U.S.C., Section 242,;

(b) Consider of petition of an investigation for the Revocation of Harrah's Entertainment's Gaming License in the State of Nevada for it's history of Discrimination and Willful Misrepresentation in Federal and State and Local Agency and Union proceedings by authorizing the commencement of a full investigation of their history of complaints to the above agencies and to include investigation into the history of cases of any similarity to this Plaintiff's case in which Harrah's Entertainment has defended it self previously and/or actively from complaints made by any employee past or present, this request is unusual however an alarming rate of increasing history of Harrah's Entertainment and Ex-Harrah's Entertainment employees have been claiming that they have been subjected to unfair misrepresenting of evidence to gain favor in legal proceedings by Harrah's Entertainment, further it is this Plaintiff's strong belief that he is capable of obtaining at least a combined total of 1001 petitioned signatures who have membership in either of the two above mentioned Las Vegas Unions within 180-days of a set date to be determined by the Judge who rules over the submission of this Plaintiff's case and the only signatures allowed in this proposed petition will be from members of the Culinary Union 226 and the Bartenders Union Local 165 who must agree that they believe an investigation into unlawful and criminal or any other unethical practices by Harrah's Entertainment, Inc, to protect Nevada's residents from such practices.

(c) Appropriate compensatory and punitive damages be awarded to the Plaintiff and against the Defendant, in an amount to be determined by the jury;

(d) Deem the settlement in arbitration on October 13th of 2009 between Plaintiff and Defendant void if Fraud On The Court is proven in that arbitration process.

(e) Prejudgment and post-judgment interest on all damages;

(f) Correction of all records to restore Plaintiff's standing with the employer and expungement of all negative information from Defendants records.

(g) Reasonable attorneys' fees and costs; and

(h) Such other relief as the court shall deem just and proper.

## G. JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues of fact and damages raised in this case.

Respectfully submitted

by

Raymond M. Sullivan

Pro Se



44

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA<br>☒ EEOC | 34B-2008-00203 |

| Nevada Equal Rights Commission | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Raymond Sullivan** | **(702) 997-3805** | **01-20-1968** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2601 S. Pavilion Center, #1250** | **Las Vegas, NV 89135** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CAESAR'S PALACE** | **500 or More** | **(702) 731-7110** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3570 Las Vegas Blvd. South** | **Las Vegas, NV 89109** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| | | | | | Earliest | Latest |
|---|---|---|---|---|---|---|
| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | **10-02-2007** | **10-02-2007** |
| ☒ RETALIATION | ☐ AGE | ☒ DISABILITY | ☐ OTHER (Specify below.) | | ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe I am discriminated against due to my disability and in retaliation.   I am subjected to disparate treatment and harassment.  I filed my complaint with the Nevada Equal Rights Commission on October 19, 2007.

On or about October 12, 1996, I was hired and am currently employed as a Bartender.

On or about October 2, 2007, I was issued a Written Warning for Attendance.  I was allegedly a no call no show on September 21, 2007.  On September 21, 2007, I called the FMLA hotline twice and called the Manager on Duty.  Although the Respondent recognizes that I called the FMLA hotline, I was still written up.  No other Bartenders are treated as I am.  I believe that Lisa La Roux was responsible for this write-up as she has made many derogatory comments about my disability and believe that she is also retaliating against me.  She has called me "Crazy" and "Psycho" and has made it difficult for me to work comfortably.   This has been ongoing since she became aware of my disability and I have complained several times.  I believe that this write up is an attempt to discharge me in the near future or to make me quit as I have already been discharged once in April 2004 and was reinstated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| *Date* _____   *Charging Party Signature* _____ | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | 34B-2008-00203 |

| **Nevada Equal Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I also recently complained to John Baker, Harrah's Chairman, because I felt that he would be able to help me but as soon as I sent him the information he requested he asked me not to communicate with him anymore.

I believe I am discriminated against due to my disability and retaliated against in violation of The Americans with Disabilities Act and Nevada State Law.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| _____ | _____ |
|---|---|
| Date | Charging Party Signature |

# CHARGE OF DISCRIMINATION

X ........                1127-07-0825r

X ........                34B-2008-00205

**Nevada Equal Rights Commission**

Raymond Sullivan                          (702) 997-3805        01-20-1968

2601 S. Pavilion Center, #1250            **Las Vegas**, NV 89135

**CAESAR'S PALACE**                        500 or More         (702) 731-7110

3570 Las Vegas Blvd. South                **Las Vegas**, NV 89109

| | | | | |
|---|---|---|---|---|
| | | | | 10-02-2007   10-02-2007 |
| X | | X | | |

X

## 2ND AMENDED CHARGE

I HAVE BEEN RETALIATED AGAINST BY BEING DISCHARGED FROM EMPLOYMENT ON
DECEMBER 1, 2008.

## AMENDED CHARGE

THIS CHARGE IS BEING AMENDED TO ADD THE FOLLOWING: I WAS REGARDED AS DISABLED AND
THEREFORE SUBJECTED TO DIFFERENT TERMS AND CONDITIONS OF EMPLOYMENT. OTHERS OUTSIDE
OF MY PROTECTED CLASS HAVE NOT BEEN TREATED IN A SIMILAR MANNER.

I believe I am discriminated against due to my disability and in retaliation. I am subjected to disparate treatment,
harassment. I filed my complaint with the Nevada Equal Rights Commission October ..., ...

On or about October 12, 1996, I was hired and am currently employed as a Bartender.

On or about October 2, 2007, I was issued a Written Warning for Attendance. I was allegedly ...

CHARGE OF DISCRIMINATION

1127-07-0825l
34B-2008-00203

## Nevada Equal Rights Commission

September 21, 2007.  On September 21, 2007, I called the FMLA hotline. I was still of the Respondent recommends that I called the FMLA hotline. I was still of believe that Lisa La Rosa was responsible for this write-up as she has a disability and believe that she is also retaliating against me.

She has called me "Crazy" and "Psycho" and has made it difficult for me since she became aware of my disability and I have complained several discharge me in the near future or to make me quit as I have already been reinstated.

I also recently complained to John Baker, Harrah's Chairman, because as I sent him the information he requested he asked me not to communicate with him.

I believe I am discriminated against due to my disability and retaliated against in violation of the Americans with Disabilities Act and Nevada State Law.

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA<br>☒ EEOC | 1127-07-0825L<br>34B-2008-00203 |

| Nevada Equal Rights Commission | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**Raymond Sullivan** | Home Phone *(Incl. Area Code)*<br>**(702) 997-3805** | Date of Birth<br>**01-20-1968** |
|---|---|---|

| Street Address<br>**2601 S. Pavilion Center, #1250** | City, State and ZIP Code<br>**Las Vegas, NV 89135** | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**CAESAR'S PALACE** | No. Employees, Members<br>**500 or More** | Phone No. *(Include Area Coo*<br>**(702) 731-7110** |
|---|---|---|

| Street Address<br>**3570 Las Vegas Blvd. South** | City, State and ZIP Code<br>**Las Vegas, NV 89109** | |
|---|---|---|

| Name | No. Employees, Members | Phone No. *(Include Area Cod* |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-02-2007**  Latest **10-02-2007**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

AMENDED CHARGE

THIS CHARGE IS BEING AMENDED TO ADD THE FOLLOWING: "I WAS REGARDED AS DISABLED AND THEREFORE SUBJECTED TO DIFFERENT TERMS AND CONDITIONS OF EMPLOYMENT. OTHERS OUTSIDE OF MY PROTECTED CLASS HAVE NOT BEEN TREATED IN A SIMILAR MANNER".

I believe I am discriminated against due to my disability and in retaliation.   I am subjected to disparate treatment and harassment. I filed my complaint with the Nevada Equal Rights Commission on October 19, 2007.

On or about October 12, 1996, I was hired and am currently employed as a Bartender.

On or about October 2, 2007, I was issued a Written Warning for Attendance. I was allegedly a no call no show on September 21, 2007. On September 21, 2007, I called the FMLA hotline twice and called the Manager on Duty. Although the Respondent recognizes that I called the FMLA hotline, I was still written up. No other Bartenders are treated as I am. I believe that Lisa La Roux was responsible for this write-up as she has made many derogatory comments about my disability and believe that she is also retaliating against me.

| I want this charge filed with **both** the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 1127-07-0825L |
| | [X] EEOC | 34B-2008-00203 |

| **Nevada Equal Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

She has called me "Crazy" and "Psycho" and has made it difficult for me to work comfortably.  This has been ongoing since she became aware of my disability and I have complained several times.  I believe that this write up is an attempt to discharge me in the near future or to make me quit as I have already been discharged once in April 2004 and was reinstated.

I also recently complained to John Baker, Harrah's Chairman, because I felt that he would be able to help me but as soon as I sent him the information he requested he asked me not to communicate with him anymore.

I believe I am discriminated against due to my disability and retaliated against in violation of The Americans with Disabilities Act and Nevada State Law.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Raymond Sullivan<br>2601 S. Pavilion Center, #1250<br>Las Vegas, NV 89135 | From: Los Angeles District Office<br>255 E. Temple St. 4th<br>Los Angeles, CA 90012 |
|---|---|

| [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 34B-2008-00203 | Sara M. Aguirre,<br>State & Local Coordinator | (213) 894-1100 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____                    August 31, 2009
Olophius E. Perry,                              *(Date Mailed)*
**District Director**

Enclosures(s)

cc:  **CAESAR'S PALACE**
3570 Las Vegas Blvd. South
Las Vegas, NV 89109

Richard Segerblom, Esq.
704 S. 9th St.
Las Vegas, NV 89101